UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THE UNITED STATES OF AMERICA

    -against-       Ind. No. 1:13 Cr. 00813 (ALC)

EZEQUIEL NOLASCO,

    Defendant.
------------------------------------------------------X

## DEFENDANT'S SENTENCING MEMORANDUM

GOLDSTEIN & WEINSTEIN

Attorneys for Defendant
EZEQUIEL NOLASCO
888 Grand Concourse
Bronx, New York 10451
(718) 665-9000

## **PRELIMINARY STATEMENT**

We respectfully submit this memorandum to provide the defendant's comments upon the Pre-sentence report (hereinafter "PSR"), and to provide additional information and documentation concerning the defendant, his role in the offense, his family circumstances and his background, none of which are fully detailed and documented in the report.

With the decision of the United States Supreme Court, invalidating the Sentencing Guidelines as a mandatory sentencing scheme, as well as the decision of the Second Circuit in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), this Court has the discretion to impose any "reasonable" sentence here. The Booker/Fanfan, Crosby decisions refer the court to Title 18 U.S.C. § 3553 (a), for a list of factors to be considered in making a determination as to what sentence constitutes a "reasonable" sentence.

The Second Circuit has refused to adopt any presumption, rebuttable or otherwise, that a guideline sentence is reasonable. United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). Further, the court should not apply the advisory guidelines as a "per se" standard of reasonableness. United States v. Rita, 127 S.Ct. 2456, 2465 (2007). This court, being in a far better position to evaluate the sentencing

factors relative to this particular defendant, may reasonably determine that the Advisory Guideline sentencing range is greater than necessary, and therefore, unreasonable in this case. Kimbrough v. United States, 128 S.Ct. 558, 574-75 (2007).

The Sentencing Guidelines are no longer mandatory under any circumstances, and the range of choices available to the sentencing judge has been significantly broadened. See United States v. Booker, 543 U.S. 200, 260-61, 125 S.Ct. 738 (2005); Gall v. United States, 552 U.S. 38, 59, 128 S.Ct. 586, 169 (2007); Kimbrough v. United States, 552 U.S. 85, 101, 128 S.Ct. 558 (2007); Rita v. United States, 551 U.S. 338, 349-55-, 127 S.Ct. 2456 (2007); Cunningham v. California, 549 U.S. 270, 286-87, 127 S.Ct. 856 (2007). District Courts must "give respectful consideration to the Guidelines," but are permitted " . . . to tailor the sentence in light of other statutory concerns as well." Kimbrough, 552 U.S. at 101 (quoting Booker, 543 U.S. at 245-246).

In imposing a sentence, the District Court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a). Nelson v. United States, 129 S.Ct. 890, 891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 552 U.S. at 101 (quoting 18 U.S.C. § 3553 (a).

3

Although the Guidelines ordinarily are "the starting point and the initial benchmark" in determining a sentence without cooperation, they are not the only consideration. Gall, 552 U.S. at 49. "[T]he District Court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines. Kimbrough, 552 U.S. at 113 (Scalia, J., Concurring). Further, the District Court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." Id. At 50; Nelson, 129 S.Ct. At 892 ("Guidelines are not only not mandatory on sentencing Courts; they are also not to be presumed reasonable") (emphasis in original). The sentencing Court must first calculate the Guideline range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. Nelson, 129 S.Ct. at pp. 891-92.

In this case, in light of the defendant's family circumstances, as more fully set forth hereinafter, including but not limited to, his limited role in the offense, the support he provides his family, his age, lack of prior criminal conduct and employment history, we believe that a non-incarceratory sentence that includes home confinement, is reasonable and appropriate.

## A. The Offense Conduct.

It is clear that the defendant was involved in serious conduct, and by requesting a non-guideline sentence, we do not seek in any way to minimize what he and his co-conspirators did. However, the manner in which he became involved in this activity and the role he performed certainly mitigate in his favor.

In this regard, at the time of this incident the defendant was gainfully employed as a licensed Taxi Cab driver (PSR, ¶ 47). While operating his cab, he picked-up and became acquainted with a person who he knew as "Green Eyes." On numerous occasions, he drove this individual to various locations having nothing to do with any illegal activity. Based upon their conversations, Mr. Nolasco was aware that "Green Eyes" did not have a valid driver's license.

On the date he was arrested, the defendant received a phone call from "Green Eyes." At the time he received the call, he was at home with his father, having finished work for that day, driving his cab. I have spoken to both Mr. Nolasco and his father regarding that conversation. Obviously, his father only heard what his son said and could not hear the other side of the conversation.

"Green Eyes" asked Mr. Nolasco if he wanted to make some money, and told him he would be paid One Hundred Dollars ($100.00) to move a vehicle from to a

parking lot. Mr. Nolasco told "Green Eyes" that he was tired, having worked all day, and did not want to leave his home. That part of the conversation was overheard by his father. "Green Eyes" persisted, and the defendant finally agreed.

When Mr. Nolasco arrived at the location, "Green Eyes" told him to move a van a very short distance to a Pathmark parking lot. Based upon all of the circumstances, Mr. Nolasco believed that there were drugs in the vehicle, however, he was unaware of the type and quantity of drugs. However, he wanted to earn the money that he had been promised, and moved the car.

The defendant denies that he took the suitcase out of the vehicle. The surveillance video provided by the Government corroborates that he did not do that. The only thing he did was to open the trunk when he was told to do so by the informant.

We are not requesting a minor/minimal role adjustment in this case, which is prohibited by the plea agreement. Further, we believe that in fashioning this plea, the Government considered the defendant's role in the offense. It must be pointed out that the defendant did nothing in connection with this case other than his involvement that one day.

## B. The defendant's background and family circumstances.

Ezequiel Nolasco is currently 32 years old, and a native of the Dominican Republic. As reflected in the PSR (¶ 38) he is a naturalized American Citizen, who obtained that status in 2007, based upon his time as a Permanent resident alien. The defendant emigrated to this country in 2002, after spending his formative years in the Dominican Republic.

The PSR also documents the very close relationship he shares with his family. Both his mother and father, with whom he resides, are retired and the defendant shares his income with them in order to contribute to the household expenses. He also supports his 5 year-old son, Ezequiel, who lives with him and his parents (PSR, ¶ 39). His daughter, Franchely, also currently resides with the defendant and his parents, because Franchely's mother has no stable residence (PSR, ¶40). He also takes his children, as well as his sister's children, to school every morning.

After his relocation to the United States, the spent his entire time in the New York area. He has always been gainfully employed. He is currently working both a cab driver and as a personal assistant caring for a handicapped person who lost his legs and has limited use of only one arm (PSR, ¶ 46). Prior to that he been a licensed cab driver, worked as a parking attendant, in a factory and in construction (PSR, ¶47-50).

7

While we are <u>not</u> asking for a downward departure based upon the defendant's family circumstances, which is also prohibited by the plea agreement, we most respectfully suggest that the defendant's family circumstances are sufficient to allow this Court to consider those circumstances in deciding whether to impose a non-guideline sentence.

The Court's authority to downwardly depart, based upon extraordinary family circumstances, and thus also to support a variance from the guidelines, is "long established." <u>United States v. Brown</u>, 98 F.3d 690, 694 (2d Cir. 1998); <u>United States v. Londono</u>, 76 F.3d 33, 36 (2d Cir. 1996).

A departure/variance is appropriate if based upon the medical condition of the defendant or other family member; and where these children require special care, or where economic hardships require such action for the benefit of the remaining family members. <u>United States v. Martinez</u>, 207 F.3d 133 (2d Cir. 2000); <u>United States v. Faria</u>, 161 F.3d at 762 (2d Cir.). See also, <u>United States v. Galante</u>, 111 F.3d 1029 (2d Cir. 1997); <u>United States v. Johnson</u>, 964 F.2d 124 (2d Cir. 1992); <u>United States v. Alba</u>, 933 F.2d 1112, 1117 (2d Cir. 1991).

Here, the defendant helps support his two children, <u>who both reside with him</u> and not their mothers, and he also helps maintain his parents financially.

The defendant relies on <u>United States v. Johnson</u>, 964 F.2d 124 (2d Cir. 1992),

in which the Court of Appeals explained that "extraordinary family circumstances were [a] valid reason for downward departure in the instant case considering that the defendant was responsible for the upbringing of four children . . . " See also: United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991); United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991); United States v. Sharpsteen, 913 F.2d 59, 63 (2nd Cir. 1990); United States v. Jackson, 756 F.Supp. 23, 27 (D.C. 1991); United States v. Handy, 752 F.Supp. 563-64 (E.D.N.Y. 1990).

The circumstances presented here do not fall within the category of cases where it can be said that the harm to the defendant's family is insubstantial and a departure would primarily benefit the defendant. United States v. Sprei, 145 F.3d 528 (2d Cir. 1998). Rather, these facts demonstrate the kinds of circumstances which produce an exceptional hardship sufficient to justify a variance from the guidelines. United States v. Tejeda, 146 F.3d 84, 87-88 (2d Cir. 1997).

**C.    Sentencing Recommendation.**

It is respectfully suggested that a non-incarceratory sentence that includes home confinement, which is somewhat below the minimum of the guideline range fixed here, is appropriate. That sentence is warranted by the defendant's family circumstances, as more fully set forth herein above, including but not limited to the support he provides to his parents and to his children, his age, lack of prior criminal

9

conduct and his limited role in the offense.

A sentence of time of time served and home confinement is also justified by the parsimony clause of Title 18 U.S.C. § 3553. While we understand that the crimes the defendant involved himself in are serious, and that a significant sentence is necessary to promote specific and general deterrence as well as respect for the law, the mitigating factors present here warrant such a sentence. It must be noted that the guideline calculations are "weight driven," and that the defendant had no ides what quantity of drugs were in the vehicle.

Thank you for your consideration.

Respectfully submitted,

GOLDSTEIN & WEINSTEIN
Attorneys for Defendant
EZEQUIEL NOLASCO
888 Grand Concourse
Bronx, New York  10451
(718) 665-9000

cc:   AUSA Samson Enzer
      by e-mail